UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MNE TRUCKING, INC., a California corporation doing business as Siberian Trucking,<br><br>            Plaintiff and Counter-Defendant,<br>      v.<br><br>OJ COMMERCE, LLC, a Delaware limited liability company,<br><br>            Defendant and Counter-Claimant. | No. 2:23-cv-05742-HDV-AJR<br><br>**MEMORANDUM DECISION AND ORDER IMPOSING COERCIVE SANCTIONS ON PLAINTIFF (DKT. 104)** |

## I.

## INTRODUCTION & PROCEDURAL HISTORY

This is a business dispute between a trucking company, Plaintiff and Counter-Defendant MNE Trucking, Inc. ("Plaintiff"), and one of its customers, Defendant and Counter-Claimant OJ Commerce, LLC ("Defendant"),[1] regarding payment for services rendered, as well as the pricing for those services.  (Dkt. 10 at

---

[1] Defendant is an online retailer engaged in interstate commerce that sells consumer goods.  (Dkt. 33 at 3.)

2-5; Dkt. 33 at 3-5.) The case started because Plaintiff alleged that Defendant failed to timely pay $91,647.50 for services rendered. (Dkt. 10 at 4.) After litigation commenced, Defendant filed a Counterclaim alleging that Plaintiff misrepresented its rates to induce Defendant to enter an agreement for trucking services and then overcharged Defendant. (Dkt. 33 at 3-5.)

The parties have been engaged in discovery for months and the Court has conducted 13 informal discovery conferences since December of 2024. (Dkts. 65, 66, 67, 69, 71, 75, 81, 92, 101, 108, 125, 129, 134.) One of the key discovery disputes has been Defendant's requests for production seeking Plaintiff's invoices to other customers. (Dkt. 103.) The Court previously determined that these requests were both relevant and proportional to the needs of the case because Defendant has asserted multiple counterclaims which focus on Plaintiff's pricing. (Id. at 7-9; Dkt. 33 at 5-9.) The Court worked with the parties for months to try and find an efficient and economical way of producing this information, first through a data export, then a sampling of invoices, and finally production of all responsive invoices. (Dkts. 67, 69, 71, 75, 81, 92.) On April 11, 2025, the Court set a deadline of April 28, 2025 for Plaintiff to complete production of responsive invoices, with Bates stamps, but Plaintiff did not meet the deadline. (Dkts. 92, 101.)

On April 29, 2025, the Court held an informal discovery conference to discuss Plaintiff's failure to comply with the Court's April 28, 2025 production deadline for invoices from 2019 through 2022. (Dkt. 101.) Plaintiff's counsel advised the Court that Plaintiff did not produce any invoices to Defendant by the April 28, 2025 deadline, and instead, provided the first tranche of invoices on the morning of April 29, 2025. (Id.) Accordingly, the Court advised Plaintiff that it would issue an Order to Show Cause re Sanctions for Plaintiff's failure to comply with the Court's deadline. (Id.) In the meantime, the Court encouraged Plaintiff to complete production of the invoices as quickly as possible. (Id.)

On May 2, 2025, the Court issued an Order to Show Cause re Sanctions for Plaintiff's Failure to Meet the Court's April 28, 2025 Production Deadline for Responsive Invoices (the "Order to Show Cause"). (Dkt. 104.) In the Order to Show Cause, the Court advised that would "impose sanctions of $500 per day for every day that Plaintiff does not complete production of responsive invoices (with Bates stamps) after April 28, 2025." (Id. at 2.) The Court set a deadline of May 9, 2025 for Plaintiff to file a response opposing these sanctions. (Id.) The Court later extended the deadline until May 23, 2025. (Dkt. 108.)

On May 19, 2025, Plaintiff filed a Status Report advising the Court on the status of various discovery efforts, including Plaintiff's efforts to produce responsive invoices as directed by the Court. (Dkt. 116.) On May 21, 2025, Defendant filed a Response to Plaintiff's Status Report (the "Response"). (Dkt. 122.) On May 23, 2025, Plaintiff filed an Opposition to Sanctions re Production of Invoices (the "Opposition"). (Dkt. 123.) Finally, on June 12, 2025, Plaintiff filed a Brief in Support of Discovery Compliance. (Dkt. 136.) The Court has considered all of the forgoing filings as well as its knowledge of the document productions at issue and the information obtained from the numerous informal discovery conferences discussing this issue. Having considered all of this information, the Court concludes that Plaintiff must pay $2,000.00 to the Clerk of Court as a coercive sanction.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(b)(2), "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders" including "treating as contempt of court the failure to obey any order an order to submit to a physical or mental examination." Fed. R. Civ. P. (37(b)(2)(A)(vii). "A

court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained." Shell Offshore Inc. v. Greenpeace, Inc., 815 F.3d 623, 629 (9th Cir. 2016) (internal quotation marks omitted).  "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).

"Where the purpose of a civil contempt sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1480 (9th Cir. 1992).  "A court, in determining the amount and duration of a coercive fine, must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 516 (9th Cir. 1992) (internal quotation marks omitted).  However, a "district court should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." United States v. Flores, 628 F.2d 521, 527 (9th Cir. 1980) (internal quotation marks omitted).

### III.
### DISCUSSION

The Court's Order to Show Cause imposed a sanction of $500 per day payable to the Court for every day after April 28, 2025 that Plaintiff did not complete the production of invoices as a coercive sanction intended to induce compliance. (Dkt. 104 at 2); see, e.g., RG Abrams Ins. v. L. Offs. of C.R. Abrams,

4

2021 WL 5213103, at *9 (C.D. Cal. Nov. 9, 2021) ("One type of civil contempt coercive sanction is a per diem fine payable to the court and imposed for each day a contemnor fails to comply with an affirmative court order."). The Court selected the amount of $500 per day based on the clear prejudice caused to Defendant by Plaintiff's failure to timely produce responsive invoices. (Dkt. 104.) Indeed, the parties had scheduled depositions for the week of May 5, 2025 and could not conduct fulsome depositions without production of the invoices. (Dkt. 101.) Moreover, the Court was unable to further extend the April 28, 2025 deadline because the Fact Discovery Cut-Off at the time was set at May 9, 2025. (Id.) Therefore, the Court concludes that a coercive sanction of $500 per day is justified by both the magnitude of the harm threatened by Plaintiff's continued noncompliance, as well as the probable effectiveness of this sanction in light of the fact that the Court had been working with the parties for months to try and resolve this dispute. (Dkts. 67, 69, 71, 75, 81, 92); see Whittaker Corp., 953 F.2d at 516.

The Court next turns to whether and when Plaintiff complied with the Court's April 28, 2025 deadline to complete production of responsive invoices. (Dkt. 104 at 2). Plaintiff contends that it completed production of responsive invoices by May 2, 2025, but acknowledges "continu[ing] to work with Harbor Litigation to address any remaining issues," even after that date. (Dkt. 123 at 4.) According to the declaration of Plaintiff's owner and authorized representative, Plaintiff "produced the first batch [of invoices] on April 29, 2025, and the balance of the production was complete by May 2, 2025, with proper bates stamps." (Dkt. 123-1 at 3.) The declaration acknowledges concerns raised by Defendant about Plaintiff's production "that the invoices were not produced in a proper format or that there was some manipulation in the process of production." (Id.) Therefore, the declaration explains that Plaintiff retained Harbor Litigation to "revie[w] the Quick Books program to determine what happened when we attempt[ed] to produce invoices." (Id.)

It is not clear to the Court whether all of the alleged deficiencies with Plaintiff's invoice production have been resolved. Indeed, the Court notes that on June 19, 2025, Defendant filed a Second Motion for Sanctions contending that the alleged deficiencies in Plaintiff's invoice production still have not been resolved. (Dkt. 138 at 8.) Given that Defendant has filed a separate motion alleging substantive non-compliance with Plaintiff's discovery obligations, the Court will reserve the issue of alleged deficiencies with Plaintiff's invoice production for the resolution of Defendant's Second Motion for Sanctions. Here, the Court finds it sufficient to determine that the accumulation of sanctions should terminate on May 2, 2025. Indeed, Plaintiff does not even argue that it complied with the Court's April 28, 2025 deadline until May 2, 2025. (Dkt. 123 at 4.) Thus, Plaintiff must pay $2,000.00 to the Clerk of Court as a coercive sanction because Plaintiff admits that it did not comply with the Court's order until at least four days after the April 28, 2025 deadline. (Id.)

As noted above, there is some evidence in the record that Plaintiff's final production of invoices on May 2, 2025 was still non-compliant. (Dkt. 123-1 at 3 (noting Defendant's concerns "that the invoices were not produced in a proper format or that there was some manipulation in the process of production").) Thus, the Court has considered imposing additional sanctions beyond May 2, 2025, but exercises its discretion to err on the side of leniency because it does not believe that imposing further sanctions will achieve any improved document production at this point in the case. Therefore, the Court is not making a finding as to the quality of Plaintiff's invoice production and may revisit that issue in resolving Defendant's Second Motion for Sanctions.

Plaintiff contends that the Court should not impose any sanction even though Plaintiff admits that it did not comply with the Court's April 28, 2025 deadline until at least May 2, 2025. (Dkt. 123 at 4.) Specifically, Plaintiff contends that "the delays in production were not due to willful misconduct but rather due to the

6

technical limitations of its QuickBooks 2007 system and the complexity of producing 19,500 invoices." (Id.)  However, the Court rejects Plaintiff's contention that it could not have produced the invoices merely four days sooner given that the Court had been working with the parties and had specifically warned Plaintiff about the potential need to produce all of the responsive invoices for months.  Plaintiff was well aware of the likely need to produce these invoices and could have worked more proactively to engage external technical assistance to complete the production in a timely manner.

In sum, the Court concludes that Plaintiff must pay $2,000.00 to the Clerk of Court as a coercive sanction because Plaintiff admits that it did not comply with the Court's order until at least four days after the April 28, 2025 deadline.  The Court believes this amount is the least coercive sanction reasonably calculated to win compliance with the Court's order to produce responsive invoices.  See Flores, 628 F.2d at 527 (9th Cir. 1980).

## IV.
## CONCLUSION

Consistent with the foregoing, Plaintiff shall pay $2,000.00 to the Clerk of Court as a coercive sanction and file a notice of payment no later than **July 11, 2025**.  If Plaintiff fails to make this payment and file a notice of payment by July 11, 2025, the Court will impose an additional $500.00 per day penalty for every day until Plaintiff makes the payment in full (including any additional sanctions accrued as of the date of payment).

IT IS SO ORDERED.

DATED:  June 27, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE